J-A01039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD LEE MARVIN JAMES | : | |
| | : | |
| Appellant | : | No. 348 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 11, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001006-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 15, 2024**

Appellant, Ronald Lee Marvin James, appeals from the aggregate judgment of sentence of $3^1/_4$ to 21 years' incarceration imposed by the Court of Common Pleas of Northampton County following a jury trial at which he was convicted of possession with intent to deliver (PWID) and possession of drug paraphernalia.[1]  For the reasons set forth below, we vacate Appellant's judgment of sentence and remand for a new trial.

Appellant was charged on December 15, 2021 with PWID and possession of drug paraphernalia following the execution of a search warrant at a house in Easton, Pennsylvania where Appellant resided, in which cocaine

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 35 P.S. § 780-113(a)(32), respectively.

and a digital scale were found. Criminal Complaint.[2] The search was conducted by Inspector Anthony Arredondo, Detective Jamie Luise, and other officers of the Easton Police Department, and Inspector Arredondo was the affiant on the criminal complaint. *Id*; N.T. Trial, 11/28/22, at 45-46, 50, 130-31. Appellant waived his right to an attorney and represented himself both in pretrial proceedings and at trial. Trial Court Opinion at 2.

The charges were tried to a jury on November 28 and 29, 2022. During *voir dire*, Prospective Juror 29 stated that he knew both Inspector Arredondo and Detective Luise. N.T. *Voir Dire* at 6-8. Appellant moved to strike Prospective Juror 29 for cause. *Id.* at 21-22. The trial court expressed a willingness to strike him for cause if the Commonwealth did not object, but the Commonwealth objected, and he was questioned further. *Id.* at 22. Prospective Juror 29 testified that Detective Luise was his neighbor who lived across the street, that he knew Inspector Arredondo, who he called "Tony," through Detective Luise, that he considered both of them friends, although he characterized Inspector Arredondo as "[n]ot a regular close friend," and that he saw Detective Luise regularly and had socialized with Inspector Arredondo and expected to do so in the future. *Id.* at 6-8, 22-24. Prospective Juror 29 also testified that he would listen to both sides and that his friendship with

---

[2] Appellant was also charged with simple possession of naloxone, but the Commonwealth withdrew that charge during Appellant's trial. Criminal Complaint at 3; N.T. Trial, 11/29/22, at 4-5.

these witnesses would not affect his ability to be fair and impartial or cause him any issues, stating:

> THE COURT: Because you know [Inspector Arredondo and Detective Luise] personally, would you be more inclined to believe their testimony than some other witness who, perhaps, you don't know?
>
> PROSPECTIVE JUROR [29]: No, not necessarily. I would use my judgment based on the evidence.
>
> THE COURT: So you would be open to the possibility that you would conclude that they were not being credible?
>
> PROSPECTIVE JUROR [29]: I would – I would listen to both sides.

*Id.* at 7-8, 24-26.

Following this further examination, the trial court denied Appellant's motion to strike Prospective Juror 29 for cause. N.T. *Voir Dire* at 27. Appellant used all of his peremptory challenges to strike other prospective jurors and, after exhausting his peremptory challenges, requested to change one of his peremptory strikes to remove Prospective Juror 29, rather than Prospective Juror 28, on whom he had used his second peremptory strike. *Id.* at 32. The Commonwealth objected, the trial court denied the request because the Commonwealth could have relied on Appellant's decision to strike Prospective Juror 28, and Prospective Juror 29 was seated on Appellant's jury as Juror 12. *Id.* at 32-34.

Inspector Arredondo and Detective Luise testified at trial that they found cocaine packaged in individual baggies and a digital scale with cocaine residue in Appellant's bedroom when they conducted the search and that they found

over $2,000 in cash in a car that Appellant had driven. N.T. Trial, 11/28/22, at 45-54, 57-58, 64-86, 131-38. Inspector Arredondo also testified, as an expert in the field of drug trafficking, that the packaging and quantity of the cocaine showed it was intended for distribution and not for personal use. *Id.* at 58-64. Inspector Arredondo and Detective Luise were the only Commonwealth witnesses who testified as to what was found in Appellant's house and car. The only other witnesses at trial were an expert witness on chemical testing who tested the substances in the baggies that Inspector Arredondo and Detective Luise found in Appellant's bedroom and testified that they contained cocaine, and an expert in the field of drug trafficking who was not involved in any of the searches, who testified that the packaging of the cocaine and the other results of the searches showed intent to distribute. *Id.* at 119-28, 151-61.

On November 29, 2022, the jury found Appellant guilty of PWID and possession of drug paraphernalia. N.T. Trial, 11/29/22, at 95. On January 11, 2023, the trial court sentenced Appellant to an aggregate term of $3\frac{1}{4}$ to 21 years' incarceration, consisting of consecutive sentences of 33 months to 20 years for PWID and 6 months to 1 year for possession of drug paraphernalia. N.T. Sentencing at 10-12; Sentencing Order.

Appellant timely appealed and, following a **Grazier**[3] hearing, at which Appellant indicated that he wished to be represented by counsel on appeal, counsel was appointed to represent Appellant in this appeal. Appellant presents the following single issue for our review:

> Did the trial court err when it denied Appellant's motion to strike for cause prospective Juror No. 29 who had a close relationship with both the affiant and another police witness for the Commonwealth?

Appellant's Brief at 4. We agree.

A criminal defendant's right to an impartial jury is explicitly granted by both Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution. **Commonwealth v. Ingber**, 531 A.2d 1101, 1102 (Pa. 1987); **Commonwealth v. Kelly**, 134 A.3d 59, 61 (Pa. Super. 2016). A trial court is required to grant a motion to strike a juror for cause in two types of situations: (1) where the juror has a close relationship with a party, counsel, victim, or witness; or, alternatively, (2) where the juror's conduct or answers to questions demonstrate a likelihood of prejudice. **Shinal v. Toms**, 162 A.3d 429, 440 (Pa. 2017); **Kelly**, 134 A.3d at 61–62; **Commonwealth v. Colon**, 299 A.2d 326, 327 (Pa. Super. 1972).

Our review of a trial court's denial of a motion to strike a juror for cause depends on which ground the disqualification of the juror is sought. **Shinal**,

---

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 5 -

162 A.3d at 441; **Commonwealth v. Dula**, 262 A.3d 609, 624 (Pa. Super. 2021). In the second situation, where the disqualification depends on the juror's conduct or answers in *voir dire*, we may reverse the trial court only for an abuse of discretion. **Shinal**, 162 A.3d at 441-42; **Dula**, 262 A.3d at 624. Whether the nature of the juror's relationship with a party, counsel, victim, or witness requires disqualification, however, is an issue of law subject to our plenary, *de novo* review. **Shinal**, 162 A.3d at 441; **Dula**, 262 A.3d at 624. Here, because the issue is whether the relationship of Prospective Juror 29 was sufficiently close to require that he be stricken for cause, our review of the trial court's denial of Appellant's motion to strike is plenary and *de novo*.

Where a juror has a close relationship with a party, counsel, victim, or witness, it is presumed that the relationship creates a likelihood of prejudice. **Shinal**, 162 A.3d at 440-41, 443-44; **Kelly**, 134 A.3d at 61–62, 64; **Commonwealth v. Dye**, 765 A.2d 1123, 1126 (Pa. Super. 2000). Prejudice is presumed in this situation regardless of whether the juror expresses any actual bias because the relationship creates an appearance of partiality and because the juror may not be aware of the effect that the relationship to the participant has on him. **Shinal**, 162 A.3d at 438, 440-41 & n.12, 443-44, 447 & n.20. Accordingly, if there is a close relationship between a juror and a party, counsel, victim, or witness, the juror must be stricken for cause even if he answers on *voir dire* that he would be fair and impartial. **Id.** at 440, 444;

*Dye*, 765 A.2d at 1126; *Commonwealth v. Perry*, 657 A.2d 989, 991 (Pa. Super. 1995).

Not all relationships between a juror and the parties, counsel, victims, or witnesses are sufficiently close to create a presumption of prejudice. *Shinal*, 162 A.3d at 443. A remote relationship, such as the mere fact that the juror is an acquaintance of one or more of the parties, counsel, victim, and witnesses or has had some ties to one or more of those persons in the past, is not sufficient by itself to disqualify a juror. *Id.*; *Commonwealth v. Colson*, 490 A.2d 811, 818-19 (Pa. 1985), *abrogated on other issue by Commonwealth v. Burke,* 781 A.2d 1136 (Pa. 2001) (fact that prospective juror had known victim's mother in the past and was acquainted with a witness and with the wife of the prosecuting state trooper did not require disqualification); *see also*, *e.g.*, *Commonwealth v. Hale*, 85 A.3d 570, 575-78 (Pa. Super. 2014), *aff'd on other issue*, 128 A.3d 781 (Pa. 2015) (fact that prospective juror was a former law enforcement officer who had worked in the special investigations unit of the district attorney's office did not require disqualification where juror did not indicate that he knew the prosecutor or any witnesses involved); *Commonwealth v. Bright*, 420 A.2d 714, 716 (Pa. Super. 1980) (fact that prospective juror lived in the same neighborhood as prosecuting attorney, had known him since he was a boy, and "liked him" did not require disqualification).

In contrast, ongoing significant work or social relationships with key Commonwealth witnesses have been held sufficiently close to create a presumption of prejudice and require a juror's disqualification. *Commonwealth v. Jones*, 383 A.2d 874, 876-87 (Pa. 1978) (denial of challenge for cause was reversible error where prospective juror was at the time of trial a member of same police department as testifying officers whose credibility was critical to the Commonwealth's case); *Kelly*, 134 A.3d at 62-64 (denial of challenge for cause was reversible error where prospective juror had an ongoing relationship with the prosecutor's office as a police officer and personally knew several police officer witnesses, although he did not work for the same police department); *Dye*, 765 A.2d at 1125-26 (denial of challenge for cause was reversible error where juror was wife of immediate supervisor of the arresting officer, who was also a witness at trial); *Perry*, 657 A.2d at 990-91 (denial of challenge for cause was reversible error where prospective juror was "best friend" of accusing police officer whose credibility was at issue and socialized with him "approximately once a week"); *Commonwealth v. Fletcher*, 369 A.2d 307, 308-09 (Pa. Super. 1976) (denial of challenge for cause was reversible error where prospective juror was at the time of trial a member of same police department as testifying officers and knew three of them personally).

Here, Prospective Juror 29 was not merely an acquaintance of two police witnesses. Rather, he testified that both of those witnesses were current

friends of his and called them by their first names. N.T. *Voir Dire* at 6-8, 23. Prospective Juror 29 testified that one of the witnesses, Detective Luise, was his close neighbor, who he sees regularly, and that he met the other, Inspector Arredondo, through Detective Luise and socializes with Inspector Arredondo. *Id.* at 7-8, 23-24. Moreover, the credibility of these two witnesses was central to the Commonwealth's case. Inspector Arredondo was the prosecuting officer and he and Detective Luise were the only witnesses who testified that drugs and drug paraphernalia were found in Appellant's residence and provided the only evidence connecting drugs or drug paraphernalia in any way to Appellant.

Such an ongoing friendship and social relationship with critical Commonwealth witnesses is comparable to the ongoing relationships with witnesses that have been held sufficiently close to create a presumption of a likelihood of prejudice in ***Jones***, ***Kelly***, ***Perry***, and ***Fletcher***. Although Prospective Juror 29 testified that he could be impartial, *id.* at 7-8, 24-26, that does not negate the presumption of prejudice from a close relationship with witnesses and is therefore not a valid ground for denying Appellant's motion to strike. ***Shinal***, 162 A.3d at 440; ***Dye***, 765 A.2d at 1126; ***Perry***, 657 A.2d at 991. The trial court therefore erred in denying Appellant's motion to strike Prospective Juror 29 for cause.

The Commonwealth's contention that this is not grounds for vacating Appellant's judgment of sentence because Appellant could have used a peremptory challenge to remove Prospective Juror 29, Appellee's Brief at 12-

13, is without merit. Improper failure to strike a juror for cause is reversible error, regardless of whether the juror is seated on the jury, if the defendant exhausts his peremptory challenges before the jury is seated. ***Ingber***, 531 A.2d at 1104–05; ***Kelly***, 134 A.3d at 62; ***Dye***, 765 A.2d at 1126. When a defendant has exhausted his peremptory challenges, the deprivation of one or more of his peremptory challenges that results from the wrongful failure to strike a juror or jurors for cause constitutes reversible error. ***Ingber***, 531 A.2d at 1105; ***Kelly***, 134 A.3d at 62. The record is clear that Appellant exhausted his peremptory challenges. N.T. *Voir Dire* at 32-33. The error in failing to strike Prospective Juror 29 therefore is not harmless and requires a new trial. ***Ingber***, 531 A.2d at 1104-05; ***Kelly***, 134 A.3d at 65.

For the foregoing reasons, we conclude that the denial of Appellant's motion to strike Prospective Juror 29 was reversible error. We therefore vacate Appellant's judgment of sentence and remand this case for a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

President Judge Emeritus Panella did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024